## KING *vs.* BARKER.

All the accounts of poor school teachers are to be paid *pro rata*, by the act of 1857 on the subject.

Petition for mandamus, from Forsyth county. Decision by Judge RICE, at February Term, 1859.

This was an application by Elisha King, for a mandamus to be directed to Hubbard Barker, ordinary and commissioner of the poor school fund, for the county of Forsyth, to compel said Barker to pay to petitioner the amount of certain claims and accounts due to him, out of said fund in the hands of said Barker.

The petition alleges that sixteen of the teachers of said county (naming them) had claims for teaching poor children, for the years 1853, 1854, 1855 and 1857, which claims had been audited in the ordinary's office, and received only a *pro rata* share due them—leaving balances unpaid on each of said claims, amounting in the aggregate to two hundred and fifteen dollars; that there are funds in the hands of said Barker, as ordinary and school commissioner, more than sufficient to pay said amount.

The petition further alleges that said claims were duly assigned and transferred to petitioner, who is entitled to receive the amounts thereof; and that he has requested said ordinary and commissioner to pay the same, but he refuses to do so; that said ordinary has in his hands the sum of five hundred dollars, received in the year 1857–'8 from the State and county taxes, appropriated by law to the payment of said claims and others of like character.

Barker, as ordinary and commissioner, answered, that he had in his hands the sum of three hundred and fifty-one dollars and eighty-eight cents, received from the State Treasurer since 1st January, 1859, the proportion of the poor school fund due the county of Forsyth for the year 1858; that there is due from the tax collector of said county about one hundred and —— dollars, the amount of taxes levied on the county for the payment of teachers for 1858, but which amount has not been paid in.

Respondent further answers that there are in his office teachers' accounts, returned and audited, for 1858, amounting to about eight hundred and twenty-one dol-

King vs. Barker.

lars and thirty-five and one-half cents; that the accounts of teachers for 1853 amounted to......................$853.13
Funds of that year, paid out, *pro rata*,................. 621.31

Balance unpaid......................................................$231.82
For the year 1854—accounts..................$442.76
Funds    "        paid *pro rata*............ 262.49½
    Balance.................................................$180.28½
For the year 1855—accounts..................$258.54
Funds    "        paid *pro rata*......... ... 197.60
    Balance.................................................$ 61.94
For the year 1857—accounts...................$820.88
Funds paid *pro rata*............................ 569.10–251.78

Balance............................................... $725.82½
    That there were other accounts filed for payment out of said funds, as follows:—
Accounts for teaching in 1849.......... ..$20.35
    "            "        1850............. 90.29
    "            "        1852............. 25.92
    "            "        1854............. 50.68
    "            "        1855............. 15.60    202.84
Aggregate of accounts prior to 1858, unpaid...$ 928.66½
Accounts for 1858, above stated.................... 821.35½

    Total unpaid.......................................$1,750.02
    The answer further states, that on a final settlement with the tax collectors, for the years 1853, 1856 and 1857, respondent received the further sum of $27.14, which, with the amount received as aforesaid from the State, makes the sum of $379.02 in his hands, which amount, and also the amount he may receive from the tax collector, levied agreeably to the recommendation of the Grand Jury, as aforesaid, when received respondent is ready to pay out as the Court may order.

After argument, the presiding Judge made the following order:

"On hearing this *Mandamus*, and the response thereto, and argument of counsel: It is ordered and adjudged that Hubbard Barker, Ordinary of said county, do pay out the funds in his hands upon all accounts filed and approved according to law, *pro rata*, to each teacher; and that said Elisha King be paid his rateable proportion of said funds on his claims, according to the act of the General Assembly passed in 1857—Pamphlet Acts, page 9, and other acts on the same subject."

To this order counsel for King excepted, and assigns same as error.

A. J. HANSELL, represented by BROWN and UNDERWOOD.

*By the Court.*—BENNING, J., delivering the opinion.

The judgment of the Court below was, that the School Commissioner should pay all the accounts *pro rata*, regardless of their dates. Was that judgment right? We think that it was. It followed the plain words of the act of 1857, on the subject. Those words are as follows:—
"That all claims for teaching poor children shall be submitted to said Commissioner, who shall have proof touching such service, and he shall allow and pay, when in funds, all claims where, in his judgment under the proof, the service has been rendered and the teacher really entitled to pay, having due regard to the real merits and justice of the claim, whether such service was rendered before or after the passage of this act, or whether such children have been returned or not. Acts of 1857, 10 Sec. 6.

It is true, then, that the judgment pursues the act. It must follow, therefore, that the judgment is right, if the act is valid. What is there to prevent the act from being

valid? Does it divest any vested rights? Was there any right to be first paid vested in any of the poor school teachers? There was none. The fund, at least all of it except a trifle, was raised subsequently to the act—was raised in 1858—and it seems impossible that there can be a vested right to a thing which thing has not come into existence. But even if it were true that there was such a vested right to this fund, it would not be true that the act divesting that right would be invalid unless the right vested under some contract. And there was no contract existing by which the right was acquired. If acquired at all, it was acquired under some general act of the Legislature, as the act of 1852, "to provide for the education of the poor." Act of 1851–'2, 3.

